Good morning, your honors. William J. Stevens appearing on behalf of the Appellants Prospect Development and John G. Wilson, or Jack Wilson. Michael Shackman for the Appellees, and my colleagues in court this morning. I would like to reserve three minutes for rebuttal. I think Judge Callahan got it right when he first ruled denying the motion to dismiss the second amended complaint and observing that there were genuine issues of material fact from which a jury could find that the statute of repose was told and therefore denied the motion. What happened after that was a motion for reconsideration. It was based on the same record that we had when the motion was initially heard and decided. It appears that one of the concerns was the findings by Judge Preston that essentially outlined a conflict of interest between Donald Kreger and Prospect Development and Jack Wilson. The essence of the malpractice claim is that Kreger represented that the loans would not impair Prospect Development's rights, that they need not be disclosed, and that because he had recused himself and because the city had independent counsel that the loans would not be a problem. So counsel, are you saying that at no point before 2010 they had any inkling that this was a conflict or improper? The fact of a conflict, I think, was revealed by the very questions that Wilson raised with Kreger at the time of the loans. What was concealed was that the conflict had been resolved or would not be a problem for the enforcement because the city had independent counsel and because it was his sound legal opinion that it would not create a defense or a problem. Obviously, they knew that they played somewhat different roles in the situation, but when it comes to was the malpractice concealed, the fact that he was asserting that the presence of Bruce Harvard, the independent counsel, and the totality of the circumstances here where he had recused himself in the situation, solved the conflict problem as far as enforcing Prospect Development's rights. So yes, there was some indication of opposing interests here, but as far as the opinion that it would not impair Prospect Development's rights to enforce a contract, that was completely concealed until Judge Preston made his ruling. And that ruling was not a ruling that there was no malpractice or no concealment. That ruling was that there was a conflict and that impaired Prospect Development's rights against the city. Counsel, in the analysis, though, for equitable estoppel or issue preclusion, whatever, it discovers or should have discovered. Isn't that the language that the cases tell us? Had discovered or should have discovered. I mean, shouldn't they have known there was some issue at that time when these loans were going on? It's not that there wasn't an issue, but a jury could find that Krieger concealed the impropriety or unenforceability. And to buttress that, he talked about his own refusal and the role that Broussard had played in representing the city. So it's the malpractice that was concealed here. And so when Judge Preston says he may have known, well, there's some indication that he knew that there was some tension there. But that doesn't foreclose a jury from finding that there was tolling of the statute of repose. And we believe that a jury could find on this record that there was concealment, that Krieger persuaded Wilson and Prospect Development that there was a defense to any issue about the conflict. So you're saying the malpractice was what was held back from the client, is what you're saying? Yes, yes. And part of the malpractice was a legal opinion that the contract rights of Prospect Development against the city would not be impaired by the loans. That the loans were separate, that they didn't have any impact on the dealings between Prospect Development and the city of Prospect Heights. And Krieger was successful in persuading Wilson and Prospect Development that this was not a problem. And there was certainly some possibility to that. And that's what I'm saying is something that a jury could find, viewing the evidence and the like most favorable to the plaintiffs, that Krieger concealed this malpractice. Well, the ruling of Judge Preston was basically one of unclean hands, was it not? Correct. Right. So do you think that was a final judgment on the merits, that was a final judgment, the ruling he made relative to the unclean hands? That was a finding that there was unclean hands, yes. That was a final judgment, and in fact that was affirmed by this court. I mean, that's all I can say. But simply the presence of the conflict or the presence of that defense doesn't solve the problem. Did Krieger give bad opinions in connection with the loans? Did he hide the consequences as far as enforceability? And could a jury find that the statute of recourse was told? And none of those issues were the subject of Judge Preston's final judgment. They weren't an issue. The only question was, can we enforce the contract rights? But it does not go to the opinions that Krieger rendered or the concealment. Counsel, let me read you a paragraph that was in the original complaint that was filed when Wilson and his company sought to recover money. And this is the paragraph. In addition, during this time, Krieger, one of the city's agents, approached developers' principal, Wilson, on multiple occasions to request a $100,000 loan in connection with a personal financial problem. In light of the close role that city's agents had in the arena project, Wilson granted such a loan in excess of $100,000 for fare that its refusal would adversely affect the developer's ability to complete the arena project. Does that give some kind of clue that something isn't quite the way it should be here? I mean, this was pled in their own complaint. So what do you say? Do you have any comment on that paragraph? Well, I think that the paragraph shows that, and it's reflected in that pleading that you've just quoted, that Wilson had some concerns about surrounding the loan. And he said... It brings us back to Justice Conner's point. It's not only new, but isn't it the standard that the cases talk about should have known? I mean, we're talking about sophisticated parties here. This isn't, you know, a ma and pa operation. These are sophisticated people. What about the should have known requirement that the case law talks about? Is that at play here? But the question is, what does that paragraph reveal about what he should have known? And I think that the scope of the inquiry is, should he have looked at the conflict and the potential conflict? And you have to view the questions about the conflict against the answers that Krieger was giving and say, is there enough in the concealment here so that a jury could conclude that he should not have known about the malpractice earlier? It's not just enough to talk about were some questions about the relationship raised, but the ultimate question is, is there enough in this record so that a trier of fact could answer that should have known about the malpractice earlier? Could a jury answer that? No. Well, at what point are there enough clues that something isn't quite kosher that the parties have an obligation to look into it? That's the question that I would ask. Look into the situation? Yes. When the question was raised, is this a problem? The answers that he got were, no, it's not a problem. This is a separate deal. I have recused myself and am not playing a role on behalf of the city. The city has independent counsel. This will not impair the enforcement of the contract. So the answers upon inquiry, the answers upon reasonable inquiry are, yes, there's a potential for conflict here. I was concerned about the relationship at the time that I made the loans, but that the answers that he got were plausible and the answers that he got could lead a trier of fact to conclude that he shouldn't have known about it earlier. Counsel, what would a reasonable person do there if the one that you're involved with this issue of loans with tells you it's all fine, don't worry about it? Should the other person then get a second opinion about that kind of legal activity? When does, again, the concern that you admit to become a conflict? And shouldn't there have been some action on your client's part to figure out, wait a minute, what is going on here? What's my position? I mean, where am I? Am I in good footing here? You've asked my question much more artfully than I did. Again, between the concern and the conflict, a person just sits there and waits until a judge rules? How many years later? Aha, I do have a conflict. Is that what the standard should be? No, I think the standard is, was it reasonable for him to accept the explanations or could a jury find that it was reasonable for him to accept the explanations? And there wasn't simply, there was some substance to the explanations. The city's got an independent counsel. I've accused myself. I'm not playing a role directly in connection with the thing. And Judge Preston had to reach into Krieger's role as bond counsel that did have something to do with the situation. And that's, in a way, that's kind of an end run around the statements that Krieger made that I've accused myself. The city has independent counsel. This isn't a problem. So there was some plausibility to Krieger's explanations. And what I'm saying is that a jury could accept that plausibility. And I think what's wrong with the lower court's decision is they said as a matter of law that I never even let a jury address the question of reasonableness. I agree with the articulation of the standard. There is a should-have-known standard. But who makes the factual determination in the light of the should-have-known standard? And it's our position that that's a question of fact for the jury on this record. Do you have any other questions? I'll reserve the balance of my time for rebuttal unless you do. Well, based on this record, as far as Judge Preston was concerned, in January 2005, the appellants knew that the loans may be inappropriate and may generate a conflict. So that's a given. And then it's very reasonable, therefore, to conclude that at that point, the plaintiffs were well aware that the legal advice they had last received may not have been accurate. And at that time, weren't they required to investigate further? I mean, we're talking about should-have-known standard. Here the standard is should they have discovered it. Sure, they have discovered it. And then the statute, following that point of time, they had two years to file their case under the statute. Again, I think what the question is, were they aware of the conflict? And what you've read from the record indicates that they were aware of the conflict. And didn't that give occasion to arise the concept that they should have investigated further? Or did they just sit back and do nothing? Acting as reasonably prudent people, did they have an obligation to proceed further in their investigation? What they did is defended against the unclean hands defense that was raised. And they presented the very defenses to the unclean hands defense that they had independent counsel, that the loans were separate. And they pressed those issues forward with some possibility. And so the question that we raise here is, was that assertion on their part enough to deal with the conflict? And we're saying that they did not have to investigate the validity of Krieger's defenses to the conflict of interest at that point. Ultimately it was revealed when Judge Preston made the ruling. Thank you. Counsel, I noticed that you have a Michigan address. Are you licensed to practice law in Illinois? Yes, I am. I've been licensed in Illinois since 1966. And I have an AIDC card on me. Often somebody's admitted pro hofpeche, but the motion or the order is not in the record. And I didn't find that order in the record. And I noticed your address, so I have an obligation to ask. So thank you. I think my – I didn't put my Cochran Bar number on the other. But it's there. As a lawyer from Michigan, you are certainly welcome in our court. Thank you. Good morning. Good morning. The court's questions have – Counsel, please state your name again because this is recording and it will pick up from right where you stood. I will do that, Your Honor. I'm Michael Shackman for the police. The court's questions covered a lot of the ground that I was planning to cover. And this is one of those cases where I'm tempted to say, do you have any questions and sit down. You're a seasoned attorney, Counsel, because many young lawyers don't know how to do that and sometimes they should. Well, you know, it's like that ad, sometimes you want to go and sometimes you don't want to go and you want to stay. So I'd like to just make a couple of points rather than go through all my notes on this argument. One point I want to make at the outset is that it's our position, that is Mr. Krieger's and Schiff's, that he never provided legal services of any sort to Mr. Wilson or his company. And that the complaint alleges that he did, and whatever we've written in our briefs and in my argument, we have to address the allegations of the complaint. But I just don't want the court to lose sight of the fact that not only do we say there was no attorney-client relationship, but in the record that Mr. Stevens filed in the trial court on behalf of his clients, that record showed that in the underlying case there was unambiguous testimony from Mr. Wilson that he never got legal advice and his company never got legal advice from Mr. Krieger. So the bedrock component on which a malpractice case normally has to be based is missing. So I say that only so that nobody later says, well, Shackman got up and he assumed that there was an attorney-client relationship and that we can operate on that assumption. But what I wanted to say about the fraudulent concealment claim, which was the principal focus of the court's questions for Mr. Stevens, is that your understanding of the record is the same as our understanding of the record, that Judge Preston made a finding in 2010 that back in 2005, Mr. Wilson plainly knew that the loans created a big problem, they created a conflict of interest, they might be improper, and that under the standard that several of you mentioned from the Mauer case and the other cases that this court has decided, that was enough to put the plaintiffs, Mr. Wilson and his company for whom he acted, he was the manager, put them on notice that they could not rely upon anything that he now claims in this lawsuit that Mr. Krieger told him about the loans. I wanted to make a couple of points that didn't get developed in the conical with Mr. Stevens. One is that there are two other events that are undisputed facts. One undisputed fact is the complaint filed in January of 2005, which Your Honor read, Judge Cunningham read, and it obviously says there's something wrong with the loans, so obviously they knew. But the two other facts are that the following year, in 2006, Mr. Wilson sued Mr. Krieger as a respondent in discovery, and he sued Schiff as a respondent in discovery. Of course, at the time that complaint was filed in January of 2005, Mr. Krieger did not represent Mr. Wilson. He had an independent counsel, the savvy Shostak law firm, well-known litigators. That law firm filed that complaint, and that law firm obviously knew what was in that complaint. So all of Mr. Stevens' argument to the effect of, well, you have a jury issue because it could be that what Krieger was purportedly telling my client was true. Well, Krieger wasn't telling his client anything after the last loan, which is 2001. And if you look at his allegations in paragraphs 5 and 6 of his complaint, you see that he missed seven loans, and he says this is when Krieger provided his advice, and the last of those loans was in 2001. So the point I wanted to make was that not only was he on notice for the reasons Justice Cunningham emphasized, but he was on notice because he actually commenced a legal proceeding against Mr. Krieger and Schiff a few months later. I believe it's January or February of 2006, and that's one additional undisputed fact that shows that there could not have been any reliance on anything that he claims now that Krieger told him. There's a second equally important fact, and that is before the statute of limitations had expired, the city of Prospect Heights filed its own affirmative defenses, including the unclean hands defense, and it said this loan arrangement was improper and it's a basis for the court to find unclean hands. Now, in the face of that allegation, which was made before the statute of repose had run, on top of the other two, the allegation and the complaint from January of 2005, and the joinder of Schiff and Krieger as respondents in discovery in 2006, it's inconceivable that Mr. Wilson and his company, represented by sophisticated litigation lawyers, who now had an opponent who was saying, you're out of court because of this relationship, it's inconceivable that they could not have, would not have, and did not understand that they had a major problem because of the loan relationship. And they were still within the statute of repose at the time each one of those three events occurred. That means that the statute of repose had not yet run, and they were free to either sue Schiff or obtain a terming agreement with Schiff and Mr. Krieger if they were acting with what Justice O'Connor correctly said is due diligence, the standard that the case law identifies. So I think those are the principal points that I wanted to make. There are two others undisputed pieces of factual data. Any one of the three, the 2005 complaint, the 2006 joinder of the parties as respondents in discovery, and the filing by the city of Prospect Heights, any one of those three alone is enough to establish that these parties were on notice. The only other point I wanted to make was early on in Mr. Stevens' argument. He said that the basis for his tolling argument, for estoppel, is that Mr. I think what he said was it's the malpractice that was concealed. It's the malpractice that was concealed. Well, that doesn't do it. You can't have tolling based upon failing to disclose that you committed malpractice. Because this court has said repeatedly, and we cited the cases on page 40 of our brief, so I won't belabor the point, but this court has said repeatedly, one cannot base a claim for tolling, a claim for fraudulent concealment, by saying you failed to conceal, you concealed the malpractice itself. Otherwise, there would always be tolling. Because otherwise lawyers, any client could say the lawyer never told me that he had committed malpractice. So there's a series of cases. There are three of them quoted on page 40 of our brief. And I think Mr. Stevens' concession that it's the malpractice that was concealed, when laid side by side with those cases, means that that is not a proper grounds for asserting fraudulent concealment, and it cannot support fraudulent concealment. So unless the court has other questions of me, I propose to depart. Well, the only question I was going to ask you, Counsel, is I was reading in your opponent's brief, and he does say that Krieger's legal malpractice and Krieger's concealment of it were not issues in the Prospect Development case versus Prospect Heights. Well, that's just what you argued a minute ago, so they were not issues. Is that right? Do you agree with that statement? I agree that, not entirely. It's correct that Krieger was not a defendant in the underlying lawsuit. It's correct that he wasn't a plaintiff either. It's correct that he didn't have a lawyer present and wasn't able to assert his explanations of what happened. But it's also true that the relationship between Wilson and Krieger was a subject of that litigation,  that back in 2005, Mr. Wilson was aware that the loans to Krieger were a potential conflict of interest and created serious problems. So it wasn't a basis for the cause of action. You say it was an issue in the case. Well, yes. Now, where I think this goes is what do you need to have to apply collateral establishment? And the U.S. Supreme Court has made clear in several cases we cite in our briefs that the issues do not have to be the same. What counts in collateral establishment can either be based on a finding of an issue of fact or on an issue of law. In this case, we're relying on the issues of fact that were found by Judge Preston. But, frankly, we rely on Judge Preston. We think he's conclusive on this issue. We think he ends the inquiry. But even if they'd settled that case the night before Judge Preston wrote his opinion and issued his order, we would have the same three undisputed facts that I've just argued in this record. And those facts show to any reasonable person that Wilson and Prospect Development could not properly rely in 2005, 2006, or 2007 when the statute of the opposed had not yet won. They could not rely on what they claim had been said to Wilson by Krieger. So we think, yes, Preston's ruling is a factual finding, and it's binding here in this case, which is what the trial judge found below. But even if he hadn't made that finding, all the other facts are undisputed, and they do the job. They establish. I mean, after all, this is fraud we're talking about. It's fraudulent concealment, but it's a component of fraud. And fraud requires that someone who asserts fraud can say that the person, the wrongdoer, misled him and that he reasonably relied upon what the wrongdoer said. That's in the Meyer case. It's in the statute that incorporates the same standard. There could not possibly have been reasonable reliance given those three uncontested facts. I hope that answers your question. Thank you. Thank you, sir. When Mr. Krieger was sued in discovery in 2006, he did not reveal anything about the issues that we're talking about here. He continued to take the position that not only that the laws were proper, but that there wasn't a problem. So he perpetuates his position in 2006. And in 2007, the city raised the defense of unclean hands. And as we've already pointed out, simply the raising of the unclean hands issue in 2007, there still is a situation where reasonable inquiry would not have revealed what we know was revealed in Judge Preston's final opinion. The central facts that we have here were not decided by Judge Preston. The question is, if the plaintiffs were put on inquiry, could a reasonable jury find that the malpractice should not have been discovered? And I think that's where we are. And no prior fact has addressed that issue. Thank you, counsel. Thank you both for your argument. This matter will be taken under advisement.